McCALEB, Justice.
This suit has for its object the expropriation of defendant’s property for the construction of a low-rent housing project. The right of expropriation is not contested and the main issue in the case is the value of the property, which was fixed by the tnial judge at $3,600. Defendant appealed from the judgment, claiming that the property is worth $7,000, and plaintiff answered the appeal, praying that the award be decreased to $3,250.
The lot in question is ' situated in the fourth municipal • district of New Orleans and has an average width of 30 feet and an average depth.of 189 feet,[1] or a tptal *455 area of approximately 5,670 square feet. The improvements (which bear the Municipal No. 1931 Rousseau Street) consisted [2] of a two-story frame house containing twelve rooms, one bath and one toilet and having neither gas nor electricity.
This property, while officially zoned as industrial, was located in a Negro slum and tenement district and was purchased by defendant in 1946 for $2,200. Its condition at the time of the trial is graphically described by the trial judge (who himself inspected the premises) in the following language :
“The structure is admittedly over 75 years old and is in a dilapidated and unsanitary condition. Some of the walls are beaver boarded and some plastered with open holes. Weather boards are missing and termites have feasted on it for years. The building lists 10 inches to one side like the Tower of Pisa. No repairs of any consequence were made, nor the building painted for years and years.” [3]
Two real estate experts testified for plaintiff and appraised the property at $3,250. One, Mr. A. B. Nicholas, stated that he arrived at this figure by two different methods: first, by calculating the value of the land from a residential standpoint and adding thereto the cost of reproducing the buildings, less 95% depreciation; second, by giving defendant the benefit of the highest use of the property (i. e., “J” industrial) and figuring its value at 60‡ per square foot. In each instance, according to the witness, a result of approximately $3,250 was reached. Later, Mr. Nicholas was recalled to the stand and asked by plaintiff’s counsel to place a value on the property based on a capitalization of the rent derived therefrom which, according to defendant, was between $44 and $48 per month. Using this basis, Mr. Nicholas valued the property at $3,600.
The $3,250 appraisement made by plaintiff’s other expert witness, Mr. J. Burrows Johnson, was predicated wholly on a price of 6O5Í per square foot for the land as an industrial site, he being of the opinion that the building was 100% depreciated and that the property had a value of only $1,515 for residential purposes.
Defendant’s only expert, Mr. Norman F. DeReyna, testified that the property was worth $6,471.20. This figure was reached on the basis of residential use and was arrived at by using a depreciation factor of 80%, it being his opinion that the building still had a useful life of from 10 to 15 years. This valuation was also stated to be founded on recent sales of allegedly similar property in the vicinity.
*457 The trial judge, apparently unable to reconcile the conflicting testimony, appointed his own expert, Mr. Allen H. Generes, to inspect the property and appraise it. (The judge accompanied Mr. Generes on his inspection.) Mr. Generes valued the property at approximately $3,550 ($50 a front foot for the lot and $2,000 for the building). This figure was apparently reached on the basis of residential use and on the belief that the building was 90% depreciated.
In arriving at a fair market value, that is, a price which would be agreed upon at a voluntary sale between a willing seller and purchaser, the best criterion of value is to be found in the sales of similar property located in the vicinity. Texas Pacific-Missouri Pacific Terminal R. R. v. Dittmar, 161 La. 444, 108 So. 877 and City of New Orleans v. Noto, 217 La. 657, 47 So.2d 36.
In the case at bar, defendant offered in evidence a number of sales of residential property in the neighborhood of the expropriated property but, in each instance, it seems clear that the improvements were in far better condition than the structure on defendant’s lot. Therefore, the evidentiary value of these sales is limited.
Mr. Nicholas testified to a sale of a vacant lot across the street from defendant’s property at a price of 57.8^ per square foot for industrial use. This sale took place less than a year and a half prior to the institution of the present suit and we feel that the value of 60^ per square foot placed upon defendant’s property by both of plaintiff’s witnesses, on the basis of this sale, is quite convincing. However, according to our calculations, this would give defendant’s property a value for industrial purposes of roughly $3,400 rather than $3,250 as stated by Mr. Nicholas and Mr. Johnson.
Taking into consideration this $3,-400 value based upon industrial use, Mr. Nicholas’ estimate of $3,600 based upon rent capitalization and Mr. Generes’ appraisal of $3,550, we are not prepared to say that the trial judge erred in fixing the compensation at $3,600. He heard the witnesses and personally visited the property and both litigants have failed to convince us of the incorrectness of this figure.
Defendant also contends that the judge erred in not condemning plaintiff to pay the costs incurred by him in these proceedings.
 This point is well taken. While R.S. 13:4521 exempts the state and its political subdivisions, public boards or commissions from the payment of court costs except for stenographers’ costs for taking testimony, it is well settled that this act is without application to the costs expended by defendants in expropriation proceedings, see Westwego Canal & Term. Co. v. Louisiana Highway Comm., 200 La. 990, 9 So.2d 389, unless tender of the true value of the property has been made before proceeding *459 to a forced expropriation. R.S. 19:12 and State v. Barineau, 225 La. 341, 72 So.2d 869. In the instant matter, since plaintiff did not tender $3,600 to defendant prior to the institution of these proceedings, it should have been cast for defendant’s court costs.
The judgment appealed from is therefore amended to the extent that the court costs incurred by defendant in these proceedings, including costs of appeal, are to be paid by plaintiff. As thus amended, the judgment is affirmed.

. The actual measurements are 31'3"5"? in front and 29'0''2"' in rear by a depth on one side of 191'5"1"' and on the other side of 186'9"7'". •, i

 The past tense is employed here since the property was destroyed and replaced by a housing project' prior to the hearing of this case on appeal.

. The accuracy of these observations is visually demonstrated by photographs of the building which were offered in evidence.