This is one of the two suits instituted by the State of Louisiana through the Department of Highways under LSA–R.S. 48:441 et seq. against the defendants herein for the expropriation of property belonging to them and referred to as municipal number 1113 LaSalle Street in the companion suit, State of Louisiana through the Department of Highways v. Mortallaro, Docket No. 43,-427, 234 La. 741, 101 So.2d 450.

For the reasons assigned in the case of State of Louisiana through the Department of Highways v. Mortallaro, Docket No. 43,-427, the judgment of the trial court is affirmed.

101 So.2d 657

**TEXAS GAS TRANSMISSION CORPORATION**

**v.**

**Mrs. Aurelia BROUSSARD.**

No. 43336.

March 17, 1958.

Rehearing Denied April 21, 1958.

Shotwell & Brown, Monroe, Landry, Watkins, Cousin & Landry, New Iberia, for plaintiff-appellant.

James W. Bean, Lafayette, for defendants-appellees.

HAMITER, Justice.

Texas Gas Transmission Corporation instituted three expropriation actions against the owners of three separate tracts of land situated in Lafayette Parish to obtain a 50' right of way or easement across such properties for the construction, operation and maintenance of a 20" high pressure gas transmission line. The respective defendants in the suits (as numbered on the docket of this court), as well as the approximate acreage contained in each tract, are as follows: No. 43,336 (the instant cause), Mrs. Aurelia Broussard—90 acres; No. 43,337, Walter Daspit—100 acres, 234 La. 760, 101 So.2d 660; No. 43,338, Diamond S. Young and Woodrow Prejean—100 acres, 234 La. 761, 101 So.2d 660.

In the district court the cases were consolidated and tried together. Thereafter, separate judgments were rendered in which plaintiff was granted the desired right of way. Also therein awards were made to the landowners as follows:

To Mrs. Aurelia Broussard:

| | |
|---|---|
| Land valued at $500 per acre (2.35 acres) | $ 1 175.00 |
| Damage from removal of trees | 350.00 |
| Resulting damage to remaining land | 2 500.00 |
| Fees for appraisal and engineering services | 300.00 |

To Walter Daspit:

| | |
|---|---|
| Land valued at $1000 per acre (1.83 acres) | $ 1 830.00 |
| Resulting damage to remaining land | 12,500.00 |
| Fees for appraisal and engineering services | 300.00 |

To Diamond S. Young and Woodrow Prejean:

| | |
|---|---|
| Land valued at $600 per acre (1.77 acres) | $ 1 062.00 |
| Temporary working space damage | 200.00 |

| | |
|---|---|
| Tree damage | 200.00 |
| Sand damage | 400.00 |
| Damage for loss of lake | 500.00 |
| Resulting damage to remaining land | 4 000.00 |
| Fees for appraisal and engineering services | 300.00 |

The judgments further ordered that plaintiff pay all costs of the proceedings, including the fee of each expert witness which was fixed at $20.

Plaintiff appealed from the judgments, it complaining only of the matter of quantum. Afterwards it deposited in the registry of the court the sums awarded the landowners and proceeded to construct the gas line. The defendants neither appealed nor filed answers.

In this court the appeals were consolidated, and they were argued and submitted together. All will be discussed in this opinion, but separate decrees will be rendered.

 Appellant is not seriously urging that the trial judge erred in fixing the value of the strips of land on which the 50′ right of way was located and granted. In fact, its counsel stated during oral argument here that the appeals were taken only because of the several awards made for damages claimed. Nevertheless, unlike most cases of this kind, the land appraisals of the various expert witnesses (three for appellant and two for appellees) were quite similar, and the values fixed by the judge were in keeping with all of them. Consequently,

we shall not disturb the judgments as to this item.

Nor shall we interfere with the fees allowed for services rendered by the appraisers and engineers or with the casting of plaintiff for all costs of the proceedings. As to these no complaint is made by appellant.

 On the other hand the district judge's granting of damages for the trees and the sand located on the expropriated right of way cannot be approved. They were native to and a part and parcel of the incumbered strips, and their worth was undoubtedly taken into consideration by the appraisers in arriving at the true value of the lands actually used.

 We consider now the remaining items listed in the judgments, they being the awards for all damages resulting to the lands situated beyond or outside of the 50′ right of way (ordinarily referred to in expropriation proceedings as severance damages). Appellant, while conceding that some damages resulted, insists that the awards are improper.

Whether or not the awards are proper is a question we are unable to determine from the record as made up. Apparently they are based on testimony of the defendants' expert witnesses who were of the belief that the entire properties of the defendants would be adversely affected by the pipeline and who expressed opinions as to the depreciation in value that each tract

would experience. But the opinions were not supported by adequate reasoning.

Texas Pipe Line Company v. Barbe, 229 La. 191, 85 So.2d 260, 271, was an expropriation action to obtain a right of way for a potentially dangerous high pressure pipeline somewhat similar to the instant one. Therein we concluded that the involved tracts of land in their entirety were suitable for large industrial sites and, hence, the values thereof would be diminished to some extent by the pipeline construction. However, from the record as made up (just as here) the resulting severance damages could not be accurately computed. Consequently, we remanded the case " * * * to permit the defendants to establish by competent evidence the difference between the market value of each tract for sale or rental immediately before and immediately after the expropriation, and in determining this market value the use to which the right of way is being put and the size and irregular shape of the lands on each side of the pipeline must be considered. * * * " We further stated therein: " * * * To make ourselves perfectly clear, defendants must effectively show the market value of each tract immediately before and immediately after the expropriation in order to establish the quantum of their severance damages."

The three large tracts involved here (Broussard—90 acres, Daspit—100 acres,

and Young-Prejean—100 acres), unlike those in the Barbe case, are not adaptable for industrial purposes. Neither are they suitable for town lot subdivisions, as these defendants contend; they are located from five to seven miles from the corporate limits of the City of Lafayette, and lying between them and the named municipality is an area of several miles which has not been so subdivided.

However, the record clearly shows that the instant tracts, while presently being used for farming and grazing purposes, are appropriate and desirable for small acreage home sites and camp sites (from one to six acres each). All are reasonably near a prosperous and thriving municipality (as above shown) and are served by improved, publicly maintained, highways; two of them have considerable frontage on the Vermillion River where boating and fishing are popular sports; and, in that vicinity, there is a great demand for plots of land of the mentioned size for home and camp construction.

Of course, for the purpose of the small acreage home and camp sites the entirety of each large tract would not be adversely affected by the pipeline. But obviously some diminution in value would result to the individual plots situated adjacent or in close proximity to the right of way, this because of the potential danger involved and of the requirement that to obtain financing of construction the build-

ings must be erected a certain distance from the line (the evidence discloses the requirement but not the exact distance). And since it is impossible now to accurately determine the extent of such diminution or depreciation the case must be remanded, as was done in Texas Pipe Line Company v. Barbe, supra, for such determination. To that end all tracts should first be platted, according to the best possible plan, for the development of small acreage plots. Then the defendants should establish by competent evidence the difference between the market value of each adversely affected plot immediately before and immediately after the expropriation. The total difference between those market values would constitute the severance damages to which these defendants are entitled.

For the reasons assigned the judgment appealed from herein is set aside insofar as it awards damages to the defendant (this does not include the awards for the value of the strip of land on which the right of way exists or the appraisal, engineering and witness fees) and the case is remanded for further proceedings according to law and consistent with the views hereinabove expressed. In all other respects the judgment is affirmed. Costs of this appeal shall be paid one-half by appellant and one-half by appellee.

FOURNET, C. J., and SIMON, J., concur in the decree.