181 So.2d 844 (1965)
CENTRAL LOUISIANA ELECTRIC COMPANY, Incorporated, Plaintiff-Appellee,
v.
James Henry WILLIAMS, Defendant-Appellant.
No. 10500.
Court of Appeal of Louisiana, Second Circuit.
December 21, 1965.
Rehearing Denied January 26, 1966.
*845 Cook, Clark, Egan, Yancey & King, Shreveport, for appellant.
Gahagan & Gahagan, Natchitoches, Provosty, McSween, Sadler & Scott, Alexandria, for appellee.
Before HARDY, GLADNEY and BOLIN, JJ.
BOLIN, Judge.
This is an expropriation suit in which plaintiff sought to obtain a servitude of right of way for the purpose of constructing an electric power transmission line across property owned by defendant in Red River Parish. Defendant resisted plaintiff's demands in the lower court by filing a plea of prematurity which was overruled. Exceptions to the jurisdiction and of no cause and no right of action were likewise overruled after which defendant answered denying the necessity of plaintiff expropriating the right of way. Alternatively defendant alleged the value of the servitude taken and the severance damage to the remaining property would total $158,684.50.
After trial on the merits the lower court decided in favor of plaintiff as to the necessity for the taking and fixed the value of the servitude at $100 per acre or the sum of $1383 for the 13.83 acres of servitude expropriated and further awarded the sum of $5000 as severance damages to the remaining property. From this judgment defendant has appealed and plaintiff answers *846 the appeal praying the award be decreased.
Following the signing of the judgment below, the transmission line was constructed and defendant on appeal has abandoned all his demands except those relating to the amount to which he is entitled.
James H. Williams owns the "I Hope Plantation" in Red River Parish consisting of approximately 2770 acres situated on the west side of Red River. This plantation has been split down the center by a strip 300 feet in width running approximately north and south upon which are located the rights of way for Louisiana Highway #1, a railroad track, a parish road and other electric, telephone and telegraph lines. East of this right of way lies 1584.3 acres of the plantation and on the west lies the remaining 1138.3 acres. We are concerned in this litigation with the latter segment of the plantation through which the right of way here involved has already been utilized by plaintiff. The expropriated strip constitutes 13.83 acres and virtually splits in half the 1183.3 acres of defendant's plantation lying west of Highway #1. It is eighty feet wide and 7529 long and runs generally north and south through defendant's property, approximately 1500 feet from and parallel with the highway. Plaintiff has erected fourteen poles on this right of way spaced at intervals of 500 feet, the height of the poles being approximately fifty-five feet.
A number of witnesses testified during the trial as to the value of the land taken, their evaluations of the fee title ranging from $135 per acre to $225 per acre. The lower court awarded the sum of $100 per acre, apparently on the theory market value of a servitude of passage would not equal that of the land if actually expropriated in fee. This reasoning is supported in our jurisprudence. See Central Louisiana Electric Company, Inc. v. Fontenot (La.App. 3 Cir., 1964, cert. denied) 159 So.2d 738, and cases cited therein.
We find no error in the award of $100 per acre for the value of the servitude. Where experts differ as to valuation of land the trial judge is in a better position to determine their credibility and the weight to be accorded their testimony than is the appellate court and, unless manifest error is shown, his decision should not be disturbed on appeal. Our examination of the record fails to reflect such error.
In addition to compensation for the property or servitude taken the landowner is entitled to severance damages caused to contiguous land by the use to which the expropriated servitude has been put. The Texas Pipe Line Company v. Barbe, 229 La. 191, 85 So.2d 260 (1956) and numerous cases cited therein.
Severance damages of the landowner are those damages suffered by the owner other than those for which he is compensated for the property expropriated. They are measured by the difference between the market value of the property immediately before the expropriation and the value after the expropriation. American Tel. & Tel. Co. of Louisiana v. Maguire, 219 La. 740, 54 So.2d 4 (1951).
Our jurisprudence has also recognized that the amount of severance damage suffered by the landowner may be arrived at by figuring the percentage of depreciation in value to the remainder of the landowner's property by reason of the location of the servitude thereon. Central Louisiana Electric Company v. Fontenot, cited supra.
Numerous witnesses testified on the trial of the instant case relative to the severance damage resulting to the remainder of defendant's land due to location thereon of the electric transmission line. Most of these witnesses were well qualified, had extensive experience in the real estate business and were thoroughly familiar with the proper method of computing the market value of property and the severance damages to *847 the remainder. Without going into detail as to the testimony of each of these witnesses, their testimony varied from an estimate of no damage to the remaining property to as high as ten percent. Using a basis of $200 an acre as the value of the entire property, a ten percent depreciation thereof would amount to $22,489.40 for the remaining 1124.47 acres of the I Hope Plantation lying west of Highway #1. Another expert witness tendered by defendant computed severance damage using a rate of nine percent of the land value, which he estimated to be $225 per acre, or a total severance damage of $22,770.52.
We conclude the remaining property of defendant has been diminished substantially in value because of the construction of the electric line across the 80-foot-wide servitude. Defendant's experts reasoned that a prospective purchaser would not pay as much for the particular property because of the existence thereon of the line. We find the record substantiates this reasoning although we feel the percentages of ten or even nine percent utilized by some of the experts is excessive under the circumstances. We are fully cognizant that in the Fontenot case, supra, a ten percent figure was used but the facts therein are not analogous to those of the instant case.
In his brief written reasons for judgment the trial judge did not specify how he arrived at the award of $5000 as severance damages. From our examination of the record we are unable to find any reason to reverse the judgment of the trial court fixing the severance damages at $5000. Since we feel such an amount will do substantial justice between the parties that portion of the award is affirmed.
There was testimony presented during the trial tending to show that defendant's radio communications system would be rendered less effective because of the interference by the construction of the electric transmission line across his property. The lower court pretermitted fixing damages for this item for the reason that at the time of the trial the line was not actually constructed and such damages could be determined only after the line was in operation. On this question, we think the court below erred. There was expert testimony that the erection of the electrical transmission line involved in this case would cause poor reception by the mobile units operated by defendant because the radio system had a very low frequency and the power lines would cause static in the receivers a distance of some 500 feet on each side of the power line. There was also testimony that such interference could possibly be eliminated by the placing of "extenders" on each of the mobile units and that the cost of such extenders would amount to $1985. Damages from forced expropriations should be determined on the basis of the facts existing at the time of the trial and the question of loss or damage to defendant's radio communications equipment should not have been left for further action at a later date. It is undisputed that the very purpose of the expropriation proceedings was to construct the power lines and the manner of such construction was well known and actually finished before the case was appealed to this court. We find defendant has adequately shown that the construction of the power line would cause damage in the sum of $1985 to his radio communication system.
Defendant also specifies error in the lower court's refusal to award him damages for the loss of the possibility of constructing an airstrip on his property. We find no merit in this contention since there was no definite plan for the construction of an airport on the property. Apparently there had been some thought given to it but the evidence touching upon this matter was speculative and for this court to award damages on such basis would be unwarranted.
Appellant also specifies as error on the part of the trial judge his fixing *848 the fees of defendant's expert witnesses at only $100 each. The fixing of the fee of experts is largely within the discretion of the trial judge and this award should not be disturbed unless clearly erroneous. We concur in the amount of the fees fixed below.
For the reasons assigned the judgment appealed from is amended so as to increase the award to defendant from $6383 to $8368 and as thus amended same is affirmed at appellee's cost.
Amended and affirmed.
GLADNEY, Judge (concurring in part, dissenting in part).
I find myself in full approval of the majority opinion as to the value of the servitude fixed therein. However, I find no satisfactory proof of severance damages. Although some of defendant's experts expressed opinions that the value of the property was reduced by a percentage of its market value, no substantial basis was expressed in support of such opinions.
Damages allowed under the Constitution in expropriation proceedings are the difference of the market value of the property for sale or rental purposes as immediately before and immediately after the expropriation. Mere consequential injuries to owners resulting from discomfort, disturbance and the like are not compensable. La.Const. 1921, Art. 1, § 2; Texas Pipe Line Company v. Barbe, 229 La. 191, 85 So.2d 260 (1956).
It is my opinion that the evidence relied upon by the majority opinion herein as proof of severance damages is inadequate and insufficient.
Accordingly, I dissent from the judgment insofar as it allows severance damages.
Rehearing denied.
GLADNEY, J., dissents from refusal.